JONAS and wife, Respondents, v. NORTHEASTERN MUTUAL FIRE INSURANCE COMPANY, Appellant.

*No. 121. Argued September 30, 1969.—Decided October 28, 1969.*
(Also reported in 171 N. W. 2d 185.)

---

For the appellant there were briefs by *Jack McManus* and *Charles H. Kennedy,* attorneys, and *Larry A. Haukom* of counsel, all of Madison, and oral argument by *Mr. Haukom.*

For the respondents there was a brief by *Denissen, Kranzush, Stodola & Mahoney* of Green Bay, and oral argument by *Calvin Joseph Stodola.*

HEFFERNAN, J. At the outset we are compelled to consider plaintiffs' claim that the errors now claimed by the defendant were not raised by a motion for a new trial directed to the trial court, and that defendant is therefore foreclosed from raising the questions on appeal in the absence of a showing of compelling circumstances. We agree with plaintiffs' position. In the landmark case of *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. 2d 380, we pointed out that, where there was a trial to a jury, no error of the court "should be reviewable *as a matter of right* on appeal without first moving in the trial court for a new trial bottomed on such error, if the error is of a category that a trial court could correct by granting a new trial." *Wells, supra,* page 518.

In *Peterson v. Wingertsman* (1961), 14 Wis. 2d 455, 111 N. W. 2d 436, we made it clear that the *Wells* rule was equally applicable to appeals from jury cases that were terminated by a directed verdict. In *Gilson v. Drees Brothers* (1963), 19 Wis. 2d 252, 120 N. W. 2d 63, the principal question posed was the applicability of *Wells* to cases tried before the date of the *Wells* mandate, but wherein a motion for a new trial could have been timely made before an appeal to this court. In that case we said that the bar was reasonably expected "to understand that the *Wells Case* applied to the granting of a directed verdict." *Gilson,* page 259.

It is apparent that, by defendant's failure to move for a new trial, it has foreclosed itself from a review, as a matter of right, of the errors alleged.

In *Wells,* we pointed out that this court, in the exercise of its discretion, could under the provisions of

sec. 251.09, Stats., order a new trial whenever we deem there has been a miscarriage of justice. In *Wells*, we said that the power was sparingly exercised but would be used in hardship cases to prevent a miscarriage of justice.

In *Savina v. Wisconsin Gas Co.* (1967), 36 Wis. 2d 694, 704, 154 N. W. 2d 237, we pointed out, citing *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183, that the test to be used is the same as that employed in criminal cases:

". . . before this court will exercise its discretionary power, it must be convinced that there has been a miscarriage of justice. This means the evidence and the law must be such that the plaintiff probably should have won and should therefore be given another chance."

Although the defendant in its reply brief has asked that we order a new trial in the interest of justice, it has not argued that point on the basis of the criteria for the exercise of the discretion as set forth in *Savina, supra.* True, it is implicit in its argument that it should be given a chance to get to the jury in the hope that the evidence, if admitted, would result in a favorable verdict. This, however, is far from the probability of victory that it must assert for us to grant a new trial under sec. 251.09, Stats.

Defendant admits that there is no evidence of a set fire and that the attempt to introduce the evidence of offers to hire others to burn the property was made without any foundation probative of an intentional burning of the property. We do not dispute defendant's contention that the evidence of offers to hire others to burn one's insured property may be admissible evidence and may be highly probative if coupled with a foundation of circumstances that tend to show the fire was occasioned by other than natural causes, that the plaintiffs or their agents had the opportunity to set the fire, and that circumstances considered as a whole point

a finger of guilt. That, however, is not the question posed here. The question was simply whether the evidence of offers to pay for the burning of the property, plus an attempt to suppress evidence of such offers, were in themselves sufficient to permit a jury to arrive at the prima facie conclusion by clear and convincing evidence that the fire had been set by the plaintiff or by someone with his consent or connivance.[1] It seems clear to this court that this evidence standing alone was insufficient to sustain the defendant's position. We need not review the question of whether the trial judge erred in excluding the evidence; for even were the evidence allowed, it is not apparent that the defendant probably would have prevailed and should now be given another chance.

Defendant's attorney has failed to cite a single authority supporting his contention that his client, a corporation, was denied due process by the exclusion of its directors from *in camera* proceedings in chambers. It would appear that the corporation was as much represented in chambers as the nature of its business structure permitted. A corporation can appear only by an agent, and it is clear that its attorney, the agent for trial purposes, was present throughout the proceedings. Moreover, the claimed error is in no way relevant to the tests applicable to determining whether there has been a miscarriage of justice. No contention is made that the presence of directors in chambers would have made the defendant's victory more probable.

Defendant also argues for the first time that the testimony of the solicitation of others to burn the property should have been admitted, if not on the basis of proof of civil arson, then as evidence tending to show an "increased hazard."

---

[1] Evidence necessary to sustain the burden of proof in a civil case where the act in question constitutes a crime is the "middle standard of proof" . . . " 'clear, satisfactory, and convincing.' " *Madison v. Geier* (1965), 27 Wis. 2d 687, 692, 135 N. W. 2d 761.

This point was not seriously made until this appeal. The fact that a single line of a trial brief refers to the proof as being probative of an "increased hazard" is not relevant in view of the clear testimony of the transcript that the only basis of the offer of proof was as circumstantial evidence of an incendiary origin.

A fair reading of the defendant's pleadings and arguments at trial leads to the inescapable conclusion that the basis for defendant's reliance upon the "increased hazard" provision of the policy was plaintiffs' neglect of sagging electric wires and not the evidence of the offers. It would be tantamount to a trial de novo were this court to give serious consideration to an argument made most casually at trial and not pleaded. We find it difficult to detect a miscarriage of justice with respect to an issue that has been so well hidden by the defendant until this appeal.

*By the Court.*—Judgment affirmed.